## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

GENEVA MCCLELLAN, et al.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No.  CIV-08-1133-F
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF OKLAHOMA, ex rel.⠀⠀)
OKLAHOMA DEPARTMENT OF⠀⠀)
HUMAN SERVICES, et al.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀)

## ORDER

Defendants' motion to dismiss this action under Rule 12(b)(6), Fed. R. Civ. P.,
filed December 19, 2008, is before the court.  (Doc. no 46.)  Plaintiffs[1] responded and
defendants replied.  A motion for temporary restraining order or, in the alternative, a
preliminary injunction, filed October 31, 2008, is also before the court.  (Doc. no. 9,
referred to in this order as a motion for preliminary injunction.)   Defendants
responded to that motion, plaintiffs replied, and on November 21, 2008, a hearing was
held on that motion and related matters, including matters bearing on the instant
motion to dismiss.  The motions have been fully briefed and heard, and are ready for
determination.

---

[1]At the November 21, 2008 hearing, several nursing homes were granted leave to intervene
as additional plaintiffs.  The nursing homes have separate counsel who did not join on the response
brief to the motion to dismiss, but the motion states it is brought on behalf of all plaintiffs.  Except
where otherwise stated, references to the plaintiffs in this order denote only the individual plaintiffs
(including Dale and Pearl McAlary, who were added as plaintiffs in this action at the hearing,
although the parties advise that Mr. McAlary is now deceased).

Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S.Ct. 1955, 1969,1974 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  *Id.*  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient;  the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  <u>Ridge at Red Hawk</u>, 493 F.3d at 1177.  In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  *Id.*

The mootness doctrine provides that although there may be an actual and justiciable controversy at the time litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction; mootness may arise as a result of a change in circumstances.  *See*, <u>Powell v. McCormack</u>, 395 U.S. 486, 496-97 (1969) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").  A plaintiff who does not have an adequate stake in a dispute, lacks standing to litigate that dispute.  *See*, <u>Citizens Concerned for Separation of Church and State v. City and County of Denver</u>, 628 F.2d 1289, 1294-95 (10th Cir. 1980), quoting <u>Sierra Club v. Morton</u>, 405 U.S. 727, 731 (1972) ("The question of standing" is "whether 'a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'").  Both mootness and standing have their constitutional origins in the "case or controversy" limitation of Article III of the United States Constitution.  That limitation insures that courts exercise their power

-2-

only in cases where a true adversary context allows informed judicial resolution. *Id.* at 1294, quoting Wiley v. Nat. Collegiate Association, 612 F.2d 473, 475 (10th Cir. 1979).

Nature of This Action

This action involves claims that plaintiffs, who include over fifty individual residents of Oklahoma nursing homes and five intervening nursing homes where the individual plaintiffs reside, should be immediately placed in pay status for the purpose of receiving Medicaid benefits to pay for long term nursing home care. Defendants are Oklahoma state agencies and individuals charged with administering Oklahoma's Medicaid program. Medicaid – not to be confused with the federal Medicare program – is a means-tested social welfare program jointly administered by the federal government and the states:

> The Medicaid program is supported by taxpayers in general and is a social welfare program for persons with limited assets and low income, and is usually run by state welfare and social service agencies. Suhor v. Lagasse, 770 So.2d 422, 424 (La.App. 4 Cir.2000) (quoting SSA Publication No. 05-10024 (January 2000)).[2] In contrast, the Medicare program is the United States' basic health insurance program for people sixty-five years of age or older who are eligible for Social Security retirement benefits. See 42 U.S.C. § 1395c. The Medicare program is supported in great part through taxes paid by employers and employees, like Plaintiffs, under the Federal Insurance Contributions Act ("FICA"), 16 U.S.C. § 310(b). Berg v. United States, 806 F.2d 978, 985 (10th Cir.1986).

Wildermuth v. Staton, 2002 WL 922137, at * 4 (D. Kan.)

---

[2] As explained in the current version of the cited Social Security Administration publication: "You should not confuse Medicare with Medicaid. Medicaid is a health care program for people with low income and limited resources. It is usually run by state welfare or social services agencies." SSA Publication No. 05-10024, January, 2009, ICN 454930.

By way of background, the Amended Complaint reflects that the common bond among the plaintiffs is that, on the advice of an attorney who represented all of them, they used certain planning techniques to establish their eligibility for long-term care at the expense of the Medicaid program. (Doc. no. 8, ¶¶ 63 - 77. *See also*, Transcript of November 21, 2008 hearing (herein: "Tr."), at 18: "All of [the plaintiffs] did the Medicaid planning.")  Defendants contend that the Medicaid planning techniques which were employed by the plaintiffs and their counsel, consisting of asset transfers and related paperwork, "were fraudulent and done for the sole purpose of qualifying otherwise ineligible people for the Medicaid program."  (Doc. no. 46, at 8.) Defendants contend that these asset transfers were designed to impoverish the nursing home resident to the extent thought to be necessary, under the relevant statutory and regulatory provisions, to deplete the "countable assets" of the nursing home resident to a level low enough to qualify for Medicaid coverage of the cost of nursing home care.  Tr. at 37 - 38.[3]  Asserting that these Medicaid planning techniques are not permitted by the applicable statutory and regulatory provisions, the defendants contend that plaintiffs are not eligible for Medicaid.

In this action, the court is not called upon to address or resolve any of these Medicaid eligibility issues.  Rather, based on the plaintiffs' allegations as well as numerous statements by plaintiffs' attorneys, it is clear that plaintiffs contend that their eligibility for Medicaid benefits has been determined by Judge Ray Dean Linder,

---

[3]  As concisely explained at the November 21, 2008 hearing by plaintiff Jay Themer, the purpose of this Medicaid planning is "to get rid of all your assets and then Medicaid will pick you up."  Tr. at 49.  Mike Baustert, son of plaintiff Mary Agnes Baustert, provided a more detailed explanation.  Mr. Baustert's brother, as attorney in fact for Mary Agnes Baustert, deeded her farm, valued at $275,000, to a limited liability company owned by the six Baustert siblings (children of Mary Agnes Baustert).  The siblings' limited liability company has no assets other than their mother's former assets.  Tr. at 85 - 87.  Mrs. Baustert's homestead was deeded directly to the six siblings, rather than to the limited liability company.  Tr. at 88.

in <u>Dale McAlary and Pearl McAlary v. State of Oklahoma, et al.</u>, Case No. CJ-2008-21, District Court of Dewey County, State of Oklahoma.  As correctly alleged in the Amended Complaint (doc. no. 8, ¶¶ 72-75), on September 9, 2008, Judge Linder ruled that Mr. and Mrs. McAlary, and all other applicants "similarly situated" to the McAlarys, were entitled to receive full Medicaid benefits per the date of their applications, effective September 15, 2008.[4]

None of the "similarly situated" individuals were parties in <u>McAlary</u>.  However, Judge Linder addressed the eligibility of these individuals based on an agreement between the parties and their attorneys in that case that all individuals who were similarly situated with the McAlarys would be bound by the result in <u>McAlary</u>.  (This agreement was possible because the same attorneys represent these similarly situated individuals, as well as the McAlarys, and because the state agencies involved in all of the pending eligibility disputes are, of course, the same.)  This agreement may be considered by this court at this stage because it is alluded to in the Amended Complaint.  (Doc. no. 8, ¶ 72.)  The agreement is also referred to in a later ruling by Judge Linder.  (*See*, Linder Tr., at doc. no. 47, ex. 1, pp. 46-47.)

Arguing that Judge Linder has already determined the eligibility of all of the individual plaintiffs in this action (*i.e.* the McAlarys and all similarly situated individuals),  *plaintiffs have repeatedly and emphatically limited the scope of this action to matters which do not involve any of the plaintiffs' eligibility for Medicaid*.  Given the importance of this proposition to the results reached in this order, the court

---

[4]The September 9, 2008 order by Judge Linder is described in the Amended Complaint.  The court has obtained a copy of the order.  The court may take judicial notice of all of court rulings without converting the motion to dismiss to a motion for summary judgment.  *See*, <u>Tal v. Hogan</u>, 453 F.3d 1244, 1265 at n.24 (10th Cir. 2006) ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment").

cites the following references which make clear that the court is not called upon in this action to consider any eligibility issues. *See, e.g.*, plaintiffs' argument entitled "Plaintiffs' Eligibility for Medicaid Has Already Been Determined by the State Court, and Is Not At Issue in This Case." (Doc. no. 41, p. 1; under this heading, plaintiffs state: "The Defendants' Response Brief indicates a desire to relitigate issues already determined by the state trial court in <u>McAlary v. State of Oklahoma, et al.</u>, Case No. CJ-2008-21, Dewey County, State of Oklahoma. In <u>McAlary</u>, Judge Linder determined that the McAlarys and the Plaintiffs in this case, as parties similarly situated, were eligible for Medicaid and prohibited the Defendants from denying Medicaid payments to them." (*Id.* at pp. 1-2.)

Additionally, the following colloquy occurred at the November 21, 2008 hearing before this court on the motion for preliminary injunctive relief:

> THE COURT: I don't think you would want to retry the underlying case [because plaintiffs won the underlying case before Judge Linder].
>
> MS. RIFFEL [counsel for plaintiffs]: And we do not want to and we have done that on two occasions and are simply trying very hard not to. Our position is very simply, once Judge Linder determined that not only the McAlarys, but all similarly situated plaintiffs, which would be the 52 plaintiffs that are involved in this case, once that decision [that these individuals were entitled to Medicaid benefits] was made, federal law mandates that these people are to be put in pay status.

Tr. at 15, ll.10-19.

Even without these descriptions by plaintiffs' attorneys, a fair reading of the Amended Complaint shows that the plaintiffs in this action seek no determinations as to Medicaid eligibility. Rather, the Amended Complaint rests on the premise that Judge Linder has already determined plaintiffs' eligibility for Medicaid and that this court should, therefore, protect plaintiffs' federal rights by enforcing Judge Linder's order and ordering that plaintiffs be placed in pay status. *See*, Amended Complaint,

factual allegations in ¶¶ 72-76 (describing parties' agreement in state court to be bound by the decision in <u>McAlary</u>, describing Judge Linder's ruling in favor of the McAlarys, describing Judge Linder's order to start paying Medicaid benefits to all applicants similarly situated with the McAlarys by September 15, 2008, and describing defendants' refusal to abide by Judge Linder's order).  *See also*, Count I, due process, ¶84 ("All Plaintiffs referenced herein are eligible for Medicaid benefits" and thus have had their due process rights denied by defendants' failure to put them in pay status); Count II, equal protection, ¶ 92 ("All Plaintiffs have been previously determined as eligible for Medicaid benefits by Judge Linder's order"); Count III, permanent injunction, ¶ 97 (Judge Linder "determined applicants (including all Plaintiffs) eligible for Medicaid benefits"), ¶ 98 (defendants "have established a practice and procedure of continuing to deny benefits in violation of federal law and Judge Linder's Order placing applications in pay status"); Count IV, failure to put applicant in pay status, ¶ 102 ("Defendants have established a policy and practice of routinely, unlawfully, and arbitrarily withholding federal Medicaid funds due to Plaintiffs, despite Judge Linder's Order requiring Plaintiffs to be put in pay status as of September 15, 2008");  and Count VI, failure to place eligible applicants in immediate pay status, ¶ 111 ("Plaintiffs, as some of the individuals identified as similarly situated to the McAlarys, have been determined by Judge Linder as eligible for Medicaid benefits," "Judge Linder further ordered Plaintiffs to be placed in pay status by September 15, 2008," and defendants "continue their practice and procedure of failing to follow the above cited federal law requiring immediate payment of benefits, thereby acting in a manner conflicting with federal mandates").

In short, the claims asserted in this action arose when defendants refused to comply with Judge Linder's September order.  As plaintiffs succinctly summarize the basis of their action in the Amended Complaint, "Defendants have refused to abide

by Judge Linder's Order by continuing to deny Plaintiffs' Medicaid benefits and refusing to pay Medicaid benefits."   (Doc. no. 8, ¶ 76.)  The court concludes that, with the exception of Count V (entitled "Failure to Provide a Fair Hearing to Applicants"), which is of a different nature, the relief requested in this action is entirely premised on Judge Linder's September order that the McAlarys and similarly situated individuals be put in Medicaid pay status.

### Discussion

Although most of the briefing on the motion to dismiss relates to the abstention issue, defendants' first ground for arguing that this action should be dismissed is that this action is moot based on the fact that Judge Linder's September 9, 2008 order has been rescinded in pertinent part, and based on the fact that Mrs. McAlary has been put into pay status.[5]

There is no dispute that on December 5, 2008, Judge Linder rescinded his September 9 ruling to the extent that ruling had purported to determine that individuals similarly situated with the McAlarys were entitled to pay status.  (Linder Tr., doc. no. 47, ex. 1, pp. 45-47.)  As a result of the modified order, plaintiffs concede that Judge Linder has now refused to order any individuals other than the McAlarys into pay status.  In response to defendants' arguments that the modified order moots this action, however, plaintiffs argue that Judge Linder has reminded the parties they are "bound by a previous agreement that the law in <u>McAlary</u> is the law in all similarly

---

[5] *See*, defendant's moving brief, doc. no. 46, p. 9, "Judge Linder changed his ruling on December 5, 2008 regarding all the other plaintiffs similarly situated, and no longer has ordered their program enrollment.  At this time, the agencies are in compliance with the District Court's orders. ... Plaintiffs also assert that the agencies have denied them equal protection of the laws in violation of the Fourteenth Amendment.  This argument has been mooted by Judge Linder's latest determination that the status quo should be maintained until such time as the Oklahoma Supreme Court has ruled on the merits of the McAlary case."

situated cases that are in this area and presented to this court." (Doc. no. 47, p. 2, quoting Linder Tr., ex. 1, pp. 46-47.)

Judge Linder's December 5 ruling referencing the agreement relied on by plaintiffs observes that the agreement will bind the parties *if* the Oklahoma Supreme Court ultimately affirms his decision in <u>McAlary</u> regarding Mr. and Mrs. McAlarys' entitlement to benefits. *Id.* As reflected in the transcript of the December hearing, Judge Linder has made it very clear that, at least as of December 5, 2008, his rulings in <u>McAlary</u> no longer purport to adjudicate the eligibility of individuals other than the McAlarys themselves. This court rejects plaintiffs' argument that simply because Judge Linder's December ruling references the side agreement between the parties, his September 9, 2008 order still purports to adjudicate the eligibility of individuals "similarly situated" to the McAlarys.

Plaintiffs further respond to defendants' arguments that Judge Linder's modified ruling moots this action by observing that this action involves issues different from those raised in any of the pending state court disputes. Plaintiffs argue that this action raises federal issues whereas the state disputes do not. Accurate though this assertion may be (a matter which this court need not, and consequently does not, address), this argument does not overcome the more fundamental point made by defendants in their motion to dismiss: absent some determination of eligibility for the fifty-plus similarly situated individuals who are plaintiffs, there is no basis for relief with regard to plaintiffs' claims regardless of whether those claims are state or federal or have or have not been alleged in other forums. As the state court proceedings now stand (a status that was, as has been noted, significantly modified by Judge Linder on December 5, 2008, after this court's November 21 hearing), the similarly situated plaintiffs have not been adjudicated eligible for benefits by Judge Linder; the parties' agreement in <u>McAlary</u> does not adjudicate anyone's eligibility;

the Amended Complaint does not seek eligibility determinations by this court; and, given the favorable rulings made by the state court, plaintiffs have no interest in amending this action to seek any eligibility determinations in this court pursuant to which, if successful, they might then seek relief.[6]

For these reasons, with the exception of claims alleged in Count V, the relief sought in this action on behalf of any similarly situated individuals is foreclosed as a matter of law. Accordingly, aside from the claims alleged in Count V, the claims of all similarly situated plaintiffs will be dismissed.

The claims alleged by Mrs. McAlary (and originally by Mr. McAlary, now deceased) are moot because Mrs. McAlary has been placed in pay status based on the still effective portion of Judge Linder's September order. The Oklahoma Supreme Court has recently ordered that Mrs. McAlary remain in pay status pending determination of the appeal in McAlary. (McAlary v. State of Oklahoma ex rel. Department of Human Services, et al., No. 106,308 in the Supreme Court of the State of Oklahoma, order dated January 26, 2009. Based on that order, plaintiffs have advised the court that the McAlarys' claims are moot.) Even Count V is moot with respect to Mrs. McAlary's claims because, given her pay status, she has no need for the "fair hearing" requested in Count V. All claims alleged by the McAlarys will be dismissed as moot.

The rulings stated above leave Count V for consideration, to the extent that count is brought by the similarly situated plaintiffs. In Count V, plaintiffs seek "a fair hearing in accordance with 42 C.F.R. §§431.240(a)(3), 431.202, 431.205-431.246,

---

[6] Thus, the situation as described by plaintiffs' counsel at the November 21 hearing no longer obtains. ("Our position is very simply, once Judge Linder determined that not only the McAlarys, but all similarly situated plaintiffs, which would be the 52 plaintiffs that are involved in this case, once that decision was made, federal law mandates that these people are to be put into pay status." Tr. at 15.)

and 431, Subpart E, 431.246." (Doc. no. 8, ¶ 104.) These are citations to federal regulations governing Oklahoma's implementation of the Medicaid program through its State Plan. (The State Plan is the document which lists all the options chosen by a state and is approved by the federal government. *See*, *generally*, 42 U.S.C. § 1396a.) The regulations cited by plaintiffs in Count V address numerous matters, such as detailed notice requirements, how hearings are requested, when hearing requests may be dismissed, hearing procedures, maintaining services pending a hearing, and matters that may be addressed at a hearing.

Aside from these general provisions, the only specific regulations cited in Count V are 42 C.F.R. §431.240(a)(3) and §431, Subpart E at 431.246.[7]  Section §431.240(a)(3) provides that all hearings must be conducted "[b]y one or more impartial officials or other individuals who have not been directly involved in the initial determination of the action in question." After these citations, Count V goes on to complain that hearing officers are Oklahoma Department of Human Services employees whose immediate supervisor is an assistant general counsel for the OKDHS. (Doc. no. 8, ¶ 105.) Count V further complains that OKDHS director Howard Hendrick routinely denies eligibility to applicants although federal law mandates benefits, and asserts that Mr. Hendrick's status as the final decision-maker before appeal to the district court violates federal law. (Doc. no. 8, ¶ 106.) The other specific regulation cited in Count V, § 431, Subpart E at § 431.246, pertains to corrective action that must be taken promptly once a favorable agency decision is reached. Thus, Count V challenges the manner in which defendants conduct eligibility hearings, including the manner in which Oklahoma selects decision-makers such as hearing officers and the final decision-maker at the administrative level.

---

[7] 42 C.F.R. § 431.202 is also cited specifically, but that regulation merely provides that a State Plan must meet the requirements of §§ 431.205 through 431.246.

Defendants point out that the general references to the regulations cited in Count V render this count too vague to give adequate notice regarding the nature of plaintiffs' complaints with the hearing process. To some extent, the court agrees. This concern, however, could conceivably be corrected by amendment.

The more fundamental problem with Count V is that the Amended Complaint also alleges that the Oklahoma Department of Human Services and the Oklahoma Health Care Authority have previously "agreed all cases similarly situated with the McAlarys' case would be bound by the Judge's decision in <u>McAlary v. State of Oklahoma, et al.</u>, Case No. CJ-2008-21, Dewey County, State of Oklahoma." (Doc. no. 8, ¶ 72.) The Amended Complaint specifically alleges that "[t]his [agreement] includes all Plaintiffs named herein." (<i>Id.</i>) Accordingly, it is clear from the Amended Complaint that because all of the individual plaintiffs in this action have agreed to have their eligibility determined by the result in <u>McAlary</u>: (i) none of these plaintiffs have any need to litigate the manner in which Oklahoma conducts eligibility hearings, including the manner in which Oklahoma selects hearing officers and other decision-makers, and (ii) none of these plaintiffs need, or are entitled to, any of the judicial relief to which they might be otherwise entitled were they to prove the allegations they make in Count V.[8] By agreement with Oklahoma DHS – the agency that pays the Medicaid benefits – the plaintiffs in this action, other than Mrs. McAlary, have hitched their wagons to Mrs. McAlary's star, rendering superfluous any viable complaint they may once have had with respect to the Oklahoma Medicaid hearing process. Any <i>present</i> right they may have had to be placed in Medicaid pay status ended (at least as a predicate for granting the relief they seek in this action) with the

---

[8]Although defendants do not make this specific argument in support of dismissal of Count V, the general issue of mootness is raised by their motion. In any event, the court has a duty to determine matters of justiciability.

modification of Judge Linder's order on December 5, 2008.  Any *future* right to be placed in Medicaid pay status will, by agreement, abide the event of Mrs. McAlary's case in the Oklahoma courts.

For this reason, the individual plaintiffs' interest in Count V relief has either been mooted by the agreement alleged in the Amended Complaint, or Count V should be dismissed because plaintiffs do not have standing to bring this particular claim. Regardless of which judicial doctrine is the better fit in these circumstances, it is clear from the face of the Amended Complaint that a justiciable controversy is not alleged in Count V and that count should be dismissed.

The nursing homes were allowed to intervene in this action because individual plaintiffs reside in those facilities, where they receive services, for which payment is required.  As a result, the nursing homes' stake in this action is derived from the individual plaintiffs' stake.  This action presents no issue as to the nursing homes' eligibility, as providers, for Medicaid reimbursement, or as to enforcement of any order that runs in favor of the nursing homes, except to the extent that such issues are raised by the individual plaintiffs.  Thus, the nursing homes' claims are derivative. For example, as alleged in the Complaint in Intervention, "the Intervening Plaintiffs are entitled, at least in part, to any recovery granted to Plaintiffs in connection with the relief requested in the Amended Complaint." (Complaint in Intervention, doc. no. 44, ¶ 13.)  Consistent with this allegation, the intervenors' prayer asks the court to "grant them relief in an amount equal to any award granted to Plaintiffs on account of the claims set forth in the Amended Complaint up to the amount due and owing by any particular Plaintiff to the specific Intervening Plaintiff for the services and benefits conferred upon such Plaintiff [by that Intervening Plaintiff]." (Complaint in Intervention, doc. no. 44, prayer for relief at p. 4.) Accordingly, the nursing homes are only entitled to relief to the extent that their residents are entitled to relief.  As the

individual plaintiffs' claims for relief are foreclosed as a matter of law, the nursing homes' claims are also foreclosed, and their claims will be dismissed.

The rulings set forth above, which relate, essentially, to the plaintiffs' standing and to the justiciability of their claims in the circumstances now before the court, make it unnecessary for the court to determine whether any of the abstention doctrines would counsel against addressing the merits of plaintiffs' claims.  The defendants have urged abstention on several bases, not the least of which is abstention under the doctrine of <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), as applied to the plaintiffs' request that this court interfere with the complicated partnership that has been established by law in order to allow state and federal laws, and state and federal officials, to administer the federal Medicaid program through a State Plan.  However, the determinations the court has already made are dispositive.  For that reason, there is no need for this court, at least at this point, to embark on a voyage in the often treacherous waters of abstention law.

<u>Summary and Conclusion</u>

To summarize, the operative facts that lead to the conclusions stated in this order are:

1.    Plaintiff Pearl McAlary has been put into Medicaid pay status. Consequently, her need for the judicial relief sought in this action has ended.

2.    Plaintiff Dale McAlary has died.

3.    The relief granted by Judge Linder in the Dewey County case no longer runs in favor of any of the plaintiffs in this action other than Mrs. McAlary.

4.    With respect to the benefits the remaining plaintiffs have sought in the Oklahoma administrative and judicial proceedings, the outcome with respect to the plaintiffs other than Mrs. McAlary will be controlled by the outcome in her case.

-14-

Given the reasons for dismissal and the fact that leave to amend would be futile, this action would ordinarily be dismissed with prejudice. Recognizing, however, that plaintiffs may wish to allege some issues arguably raised in this action in state proceedings, the court finds that dismissal should be without prejudice. Accordingly, regardless of the specific basis for the dismissal of any particular claim, all claims will be dismissed without prejudice.

After careful consideration, defendants' motion to dismiss is **GRANTED**. This action is **DISMISSED** without prejudice. The motion for preliminary relief is **STRICKEN** as moot.

Dated this 9th day of February, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-1133p005(pub).wpd